THE STATE OF NEBRASKA, EX REL. THE ATTORNEY
GENERAL, V. L. C. BURR, AN ATTORNEY AT LAW.

1.  Attorney: UNLAWFUL CONDUCT: INFORMATION. Where it
    is alleged in an information filed against an attorney at law for
    the purpose of his removal from office, that a person was con-
    victed of the crime of murder in the first degree and sentenced
    to be hanged, which conviction and sentence was affirmed by
    the supreme court, and pending a proceeding in error to the
    supreme court of the United States the convict was confined in
    the jail of a county, other than the county in which the con-
    viction occurred, for safe keeping, which allegation is admitted
    by the answer of respondent, this will be sufficient, under the
    law of this state, without further proof, to show that the impris-
    onment was legal, and that a release of the person convicted and
    so imprisoned would be wrongful and in violation of law.

2.  ———: EVIDENCE. Testimony examined, and *Held*, To sup-
    port a finding of fact.

3.  U. S. Commissioner: HABEAS CORPUS. A United States
    commissioner appointed by the circuit court of the United States
    has no authority to issue a writ of *habeas corpus* and discharge
    from the custody of a sheriff a person who has been convicted of
    a felony by the courts of the state. The issuance of such writ
    and the discharge of such prisoner thereunder would be void,
    and in effect an escape of the prisoner. An attorney having
    charge of a cause through the district and supreme courts of the
    state and in the supreme court of the United States cannot be
    heard to insist that in procuring the issuance of such writ and
    the release of such convict he acted in good faith, believing at
    the time that such proceeding was in accordance with law.

4.  Attorney: CONSTRUCTION OF STATUTE. Section 5 of chapter
    7, Compiled Statutes of 1885, does not control the action of an
    attorney in conducting "the defense of a person charged with a
    public offense," but this is limited to such defense in a court
    upon the trial of the case on its merits, or in a collateral or in-
    terlocutory proceeding. It does not permit the use of illegal or
    fraudulent means to secure the release or escape of a person con-
    victed of crime.

5.  ———: REVOCATION OF LICENSE TO PRACTICE. The supreme
    court, having power by express statute to grant a license to

38

practice law, has an inherent right to see that the license is not abused or perverted to a use not contemplated in the grant. *People v. Goodrich*, 79 Ills., 148.

6. ————: DUTY OF ATTORNEY. In granting a license to practice law it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts. *Id.*

7. ————: DECEIT. If a deceit is practiced by an attorney in his character as such, although not in a suit pending in the court, he may be removed from his office as attorney. The effect of such removal is to deprive the attorney of the right to practice as such in all the courts of record of the state, *Vide In the matter of Peterson*, 3d Paige's Chancery Rep., 510.

8. ————: REMOVAL FROM OFFICE: CASE STATED. Where an attorney was employed to defend a prisoner charged with murder in the first degree, and upon trial the prisoner was convicted of the crime charged, and sentenced to be hanged, and upon a removal of the cause by proceedings in error to the supreme court by such attorney, the judgment was affirmed, and upon the application of the same attorney, on behalf of the prisoner, the supreme court of the United States granted a writ of error, staying execution of sentence until after decision, and while such cause was pending in the supreme court of the United States the attorney, without warrant or authority of law, procures a United States commissioner to issue a pretended writ of *habeas corpus* and discharge the prisoner on bail, and the prisoner is thus allowed and caused to escape, such conduct was held to be a violation of the official duties of an attorney, and that he should be removed from office therefor.

ORIGINAL information by the attorney general, alleging unofficial conduct of respondent as an attorney at law.

*William Leese, Attorney General,* for the information.

*J. M. Woolworth,* for respondent, cited: *Ex parte Burr,* 9 Wheaton, 530. *Ex parte Garland,* 4 Wall., 378. *Ex parte Robinson,* 19 Wall., 512. *Dickinson v. Dustin,* 21 Mich., 561. *People v. Harvey,* 41 Ill., 277. *Ex parte Tillinghast,* 4 Peters, 108.

REESE, J.

On the 30th day of September, 1885, the attorney general, acting in the line of his duty, presented an information to this court alleging, among other things, that on the 26th day of October, 1883, one Matthias Simmerman was convicted of murder in the first degree by the district court of Kearney county and sentence of death was pronounced against him; that afterwards such proceedings were had as brought the cause into the supreme court for review upon error, where the judgment and sentence of the district court were affirmed, and the 17th day of April, 1885, was fixed upon as the time for the execution of the sentence; that on the third day of March, 1885, a writ of error was allowed by one of the associate justices of the supreme court of the United States, which writ was issued out of said court, commanding this court to stay proceedings until the cause could be heard and decided by that court, and that said cause was still pending therein. That said Simmerman was, by order of the court, removed to the county jail of Buffalo county for safe keeping; that respondent is now and for some time last past has been a practicing attorney of this court, and as such attorney has had sole control of said cause on behalf of said Simmerman, and while said cause was still pending in the supreme court of the United States the said respondent, on the 25th day of September, 1885, in the county of Buffalo, in this state, did falsely, willfully, and knowingly represent to one Marsh Saville, a United States commissioner at Kearney, in said county, that, as such commissioner, the said Saville had jurisdiction to release said Simmerman on bail, and for that purpose had power and authority to issue a writ of *habeas corpus* to the sheriff in whose custody said Simmerman was detained, and cause said Simmerman to be brought before him for said purpose of admitting him to bail; that said

Saville, as such commissioner, acting on the false advice of respondent as such attorney at law, on said day issued a writ of *habeas corpus* in favor of said Simmerman to the sheriff of Buffalo county, commanding him to produce the body of said Simmerman forthwith before the said Saville, which said writ was served by a deputy marshal of the United States, and on the same day, in obedience to said writ, the said sheriff delivered said Simmerman before said commissioner, who, acting under the sole advice and counsel of respondent, discharged said Simmerman from the custody of the sheriff and from the authorities of the state; that no notice of any kind of said proceeding was served upon the attorney general, nor any other person, to appear in behalf of the state, but that the whole proceeding was clandestine and executed in secrecy by respondent, and was a trick and device contrived by respondent as such attorney at law, and with intent to deceive and to obstruct the due course of justice and of the legitimate authority of the state; that at the time respondent so procured said writ to issue and said Simmerman to be discharged from custody, he well knew the same to be contrary to law and the advice to be false. The prayer of the information was that the matter be referred to a committee of the bar for investigation, and in order that such steps might be taken as should be deemed necessary, etc. But the court was of the opinion that sufficient was contained in the information filed by the attorney general, and that it was his official duty to conduct the examination, in order that the inquiry might be thoroughly and properly made.

By the direction and order of the court notice was served upon respondent, and he appeared and filed an answer to the charges, admitting the proceedings before the United States commissioner as alleged in the information, but denying all allegations touching bad faith or false advice on his part, and alleging that all steps taken by him in the matter of the release of Simmerman were taken in good

faith, without collusion, fraud, deceit, evil design, or secrecy, and with no impure or dishonest motives on his part.

The matter was referred to a committee of attorneys of the court, consisting of John C. Cowen, of Douglas county, chairman; M. L. Hayward, of Otoe county; John M. Ragan, of Adams county; A. Ewing, of Merrick county; and N. S. Harwood, of Lancaster county; with directions to hear the testimony and to find and report their conclusions of fact and of law.

In obedience to this order the committee met, and were about to proceed to the taking of the testimony, when an objection to the taking of testimony was made, upon the ground that the court had no jurisdiction to make the inquiry, which objection was preserved by the record, and the testimony of Saville taken, when it was stipulated that the case should be submitted upon this testimony, the pleadings in the case, and the copy of the writ of *habeas corpus.*

The finding of the committee was as follows:

*   *   " The committee find that it is admitted by the pleadings that on the 26th day of October, 1883, said Mathias Simmerman was convicted in the district court of Kearney county, Nebraska, for the crime of murder in the first degree, and sentenced to be hanged; that the case was brought into this court, and all the proceedings confirmed, on the 18th of November, 1884, and said Simmerman was on said date, by the court, sentenced to be hanged on the 17th day of April, 1885; that on March 3d, 1885, a writ of error was issued out of the supreme court of the United States, staying all the proceedings in said case; that on the 25th day of September, 1885, such case was pending in the supreme court of the United States; that at that time said Simmerman was and for some time before had been confined in the county jail of Buffalo county, Nebraska, by order of this court, under sentence of death; that at said time, and for many years before, the said re-

spondent L. C. Burr was an attorney of this court, and the attorney for said Simmerman in all said proceedings.

"It is also admitted by respondent's answer that on the 25th day of September, 1885, the respondent L. C. Burr appeared as attorney for the said Matt. Simmerman before one Marsh Saville, then acting as United States commissioner of the district court of the United States for the state of Nebraska, and then and there, as such attorney, filed with said Saville the petition of said Matt. Simmerman for a writ of *habeas corpus*, with a view of having said Simmerman brought from said jail before said Saville, and by him admitted to bail; that thereupon said Saville issued said writ, directed to the sheriff of Buffalo county, commanding him to bring the body of said Simmerman before said Saville, which writ was served by A. G. Hastings, a deputy United States marshal for the district of Nebraska; that said marshal and said sheriff produced said Simmerman before said Saville, in obedience to said writ, and the said sheriff thereupon made return of the cause of the captrue and retention of said Matt. Simmerman, and that said Saville then and there released said Simmerman upon bail.

"We further find from the testimony that such proceedings did not take place at the office of said Saville, but at a hotel in Kearney. The writ was issued about six o'clock, served about eight o'clock, and Simmerman released about nine o'clock of the evening of the 25th of September, 1885; that said L. C. Burr persuaded said Saville into the belief that, as such commissioner, he had jurisdiction and authority to release said Simmerman on bail, and that it was his duty to do so, and induced said Saville to issue said writ of *habeas corpus* and release the said prisoner Simmerman, on a bail bond of $10,000, signed by a citizen of Wyoming territory, but whose name is not given in the testimony.

"No notice of any kind of the foregoing proceedings was given to the state authorities.

"The committee further reports as its conclusions of.

law, that said Simmerman was legally confined in the jail of Buffalo county in the custody of the sheriff of that county; that he was not entitled to bail; that said Saville had no authority to issue said writ and release the prisoner, and had no jurisdiction to take any action whatever in the premises; that the whole of the proceedings to secure the release of the prisoner Simmerman at Kearney were without any authority or precedent whatever, and were in flagrant violation of law and the judgment of this court in the case.

"It is also our conclusion of law that the prófessional or other conduct and acts of an attorney at law—an officer of this court, admitted to practice under its rules—as affecting the trust and confidence reposed in him as such attorney, and his relations to the court by virtue of his license, are within the jurisdiction of this court to take such action with respect thereto as the facts may warrant."

This report is signed by all the members of the committee.

Upon the filing of the report, respondent filed certain exceptions thereto, as follows:

"This defendant excepts to the finding in said report ' that at that time (that is to say, on the 25th of September, 1885), said Simmerman was, and for some time before had been confined in the county jail of Buffalo county, Nebraska, by order of this court (that is to say, the supreme court of the state of Nebraska), under sentence of death,' whereas the said committee in and by its said report, should have found that said Simmerman had been prior to January 1st, 1885, by order of the district court of Kearney, removed to the county jail of Buffalo county for safe keeping, but it did not by the pleadings or proofs in this matter appear where or upon what authority he was on said day confined, and for aught that appeared in and by said proceedings he was illegally restrained of his liberty."

"Second. This defendant excepts to the finding in said

report, 'that said Simmerman was legally confined in the jail of Buffalo county,' whereas the said committee in and by said report should have found that in and by the pleadings, proofs, and proceedings in this matter it did not appear by what, if any, authority the said Simmerman was confined, and for the purposes of the inquiry submitted to said committee it must be taken and held that he was illegally confined and restrained of his liberty without due process of law."

"Third.    This defendant excepts to the finding in said report, that he 'persuaded said Saville into the belief that as such commissioner he had jurisdiction and authority to release said Simmerman on bail, and that it was his duty so to do, and induced said Saville to issue said writ of *habeas corpus*,' whereas the said committee in and by its said report should have found that this defendant duly, fairly, honestly, and in the course of his duty as an attorney and counselor at law, presented to said Saville the facts and law of the case and addressed to them only such arguments as he was justified in doing."

"Fourth.    This defendant excepts to the said report because the said committee fail and neglect in and by their said report to find that this defendant did in good faith and without falsehood, in the discharge of his duty as an attorney for said Mathias Simmerman, make out and file a petition for a writ of habeas corpus with said Saville; that an open, public hearing was had of said cause and *habeas corpus*, and the same proceedings therein were, on the part of this defendant, had and taken and prosecuted in good faith, without fraud or collusion, deceit, guilt, artifice, circumvention, or collusion; that no disrespect of this court or its judgments or decrees was intended or designed, but he acted in good faith, with pure and honest motives, and with no evil design and without deceit or collusion."

"Fifth.    The said defendant excepts to the finding of the said report, ' that the professional or other conduct and

acts of an attorney at law as affecting the trusts and confidence reposed in him as such attorney, and his relations to the court by virtue of his license, are within the jurisdiction of the court,' whereas the said committee in and by its said report should have found that this court has no jurisdiction to inquire of or in respect to the matters and things by the attorney general complained of in the information filed herein."

These exceptions, in connection with the whole case, were submitted upon elaborate arguments, both printed and oral, by the very able counsel representing respondent, and will be noticed by us substantially in the order in which they were presented.

The first exception is in part, though upon an immaterial matter, well taken; that is, as to the finding that Simmerman was confined in the jail of Buffalo county by order of this court. The information alleges that "the said Simmerman was by order of the court removed to the county jail of Buffalo county for safe keeping." There is no allegation that such removal was by order of this court. This allegation is admitted by the answer of respondent and should have been so found by the committee or referees. It is quite probable the mistake was made by the person who copied the report with the type writer, and the error was overlooked by the committee before signing. To this extent the report will be modified and corrected by changing the word "this" to "the," according to the allegation and admission of the pleadings, since no order has been made by this court as to the place of confinement of Simmerman. But in our view of the case this matter is wholly an immaterial one, as it is alleged and admitted that said Simmerman was confined in the jail of Buffalo county "for safe keeping" during the pendency of the cause in the courts of review. If he was confined there for that purpose and by that authority, the confinement was legal. It is alleged and admitted throughout that Simmerman

was so confined in the county jail of Buffalo county. The petition for the writ of *habeas corpus* prepared by respondent and admitted in evidence alleges the conviction and the confinement thereunder, but that the confinement is illegal because the said several judgments (of the district and supreme courts) are void because they deprived Simmerman " of the right to resist an unlawful attempt to arrest" said Simmerman, the killing having been done while the deceased was attempting to arrest him without a warrant. There is amply sufficient in the pleadings and evidence to show that Simmerman was held in the county jail of Buffalo county under this conviction for safe keeping. Section 377 of the criminal code provides that, " whenever it shall be lawful and necessary to confine any person in custody previous to a conviction upon a criminal accusation, or in custody for contempt or alleged contempt of court, or upon an attachment by order of a court or judge, or otherwise in lawful custody or upon conviction for any offense, and there shall be no secure jail in the proper county, the officer or person having him in such custody may convey him to and confine him in the jail of any county in ·the state, or other secure and convenient place of confinement in the state, to be procured by such officer or person having such prisoner in custody."

By this, in connection with the pleadings and evidence, it appears that Simmerman was legally confined in the county jail of Buffalo county as he was confined by *virtue of the judgment of conviction.* Neither can it avail respondent anything that Simmerman was confined in Buffalo county in the custody of the sheriff of that county, as in this, while holding him under the judgment of conviction, he was acting officially, and the imprisonment in this sense also was lawful. *Martin v. Seeley,* 15 Neb., 136. The foregoing substantially disposes of the second exception, and no further attention need be given to it.

The next exception is the third, which is to that part of the

report which finds that respondent " persuaded said Saville into the belief that as such commissioner he had jurisdiction and authority to release said Simmerman on bail, and that it was his duty so to do, and induced said Saville to issue the writ of *habeas corpus*," etc. The testimony of Saville was taken and accompanies the report. By this testimony it appears that the witness had a conversation with respondent prior to the issuance of the writ. He says: " The conditions were these plain, simple, naked statements, and that was this: I said, 'If you can show me that the United States commissioner has the power, and it is his duty to release a pérson that has been first under the state court and his case has been appealed to the United States supreme court, if you can show me that the federal authorities have control of the prisoner instead of the state authorities, and that I have the right to release him under bail, and you will furnish me with good and sufficient bond, I'll do it.'" Again, in another part of the testimony, he says: " I never met Mr. Burr in my life until the night of the release of Mr. Simmerman on bail; that's the first time I ever saw him. Then I spoke to him in regard to two things. One was my right to do this and my duty to do it, and the second was the sufficiency of the bail. Mr. Burr says that he is satisfied that I had the jurisdiction and it was my duty to do it, and I thought so too, and I am inclined to think so yet," etc. Again, this question was asked him: " How long was Mr. Burr there before the writ was issued, in Kearney?"

A. He came up on the B. & M. train about eight o'clock, I think. I had a talk with him about an hour.

Q. Did you talk about the jurisdiction of the commissioner?

A. Why certainly; that was the only thing; that and the sufficiency of the bond were the only two things I cared anything about.

\* \* \* \* \* \* \* \*

Q. Now, what did Mr. Burr say in regard to a penalty?

A. He said it was my duty to do this, to get the order of the writ of *habeas corpus*. The whole question to me was this fact: Whether the federal court has jurisdiction and right of custody of the prisoner. It's what the whole question was on.

Q. I was going to ask you to state what was said in regard to a penalty by Mr. Burr?

A. Well, the thing was this: that he told me—I can't tell it in words as he told it—but he said it was my duty as United States commissioner to have custody in this case.

Q. Mr. Burr told you that?

A. Yes, that it was my duty.

It is very apparent from the testimony of the witness that his knowledge of the law was somewhat limited. That he questioned his right to take the step suggested, and that he relied upon respondent for information as to his duty. It is also very clear, as this testimony is uncontradicted, that respondent not only told him that he had authority to issue the writ and admit Simmerman to bail, but that it was his duty to do so.

In the further consideration of this exception we will consider with it the fourth, which reaches to the honesty of purpose and good faith of respondent in procuring the discharge of the prisoner in the manner in which it was done. It was conceded on the argument that no authority existed in Saville to issue the writ, and hence, clearly, it was not his duty to issue it. Indeed, such concession could not be avoided, for the law nowhere, by hint, intimation, or suggestion, would in any degree present to the mind of a reader, whether learned in the law or not, any such an idea. His duties are defined by law, and no construction of the language could be given which would lead a legal mind, or any mind for that matter, to believe such power existed.

It would be an insult to the intelligence of respondent, and to his sagacity as a lawyer, to say that he believed that

such power existed. His reputation at the bar would, of itself, repel such an idea. As well might one apply to a justice of the peace for such a process. In one sense the respondent (for whom the writer has always entertained the highest respect) was doubtless acting in good faith, and that was, he felt the great responsibility resting upon him of protecting the life of a fellow being whom he had been defending. Feeling this responsibility he did not stop to enquire as to methods. Not that he was then engaged in his defense, for he was not, but having suffered defeat, he sought to avert the doom which seemed to be impending over his client. But this condition of things could in no sense justify the measures adopted and the course pursued. So far as good faith in a legal and legitimate sense is concerned, as well might he have opened the jail door and told the condemned man to flee for his life.

It is said by the learned attorney who has so ably conducted the defense of respondent that "this case involves a great principle of professional ethics," referring to the duties and rights of an attorney in conducting the defense of a person charged with crime, and the brief before me shows careful and labored research upon this question. Statutes and opinions of distinguished men, extending back some three hundred years, are cited and quoted for the purpose of giving force to the provisions of the second clause of section 5 of chapter 7 of the Compiled Statutes of 1885. This clause, in connection with the first line of the section, is as follows: "It is the duty of an attorney and counselor * * * to counsel or maintain no other actions, proceedings, defenses, than those which appear to him legal and just, except the defense of a person charged with a public offense." It is insisted that this section makes the attorney sole judge as to the propriety of his methods, and that he is to answer to no one save to his own conscience as to the rectitude of his actions; and that to hold him otherwise responsible would be not only an injury to him,

but a greater one to the profession which he represents. We take the liberty to transcribe from respondent's brief a cogent statement of the views of his counsel upon this point. He says: "I do not say that the lawyer using improper means for the defense or escape of his client shall not and ought not to be punished; he certainly will be punished. Instructed as no other man is in what is right and just, the lawyer who resorts to vicious methods will meet a retribution just as certain as the rising of the sun and the going down of the same. Within himself is a judgment seat, and before it he must stand to answer for his sin, and he can never escape the judgment; but when you call him before another court to answer for his misdeed, without showing corrupt purpose and intentional wrong, you do a greater injury than letting this guilty man escape. You punish with infinitely greater severity the profession he has disgraced and the society he has outraged."

The only difficulty with the views here presented and those presented by quotations from the declarations of learned men and the statute above quoted, is their want of applicability to the case at bar. Were these principles invoked in behalf of one who had transcended the bounds of propriety and right in "the *defense* of a person charged with a public offense," they would be applicable here, and would decide the case in favor of respondent without question. But what is meant by the words above quoted? Simply that while defending such a case the lawyer must to a great extent be the judge of the manner in which he will make the desired defense. Would he be justified in extorting from a court or jury by force or intimidation the desired ruling or verdict? Certainly not. Would he be justified in rescuing his client by force and violence from the officer in whose custody he might find him? As clearly not. His conscience must be his guide as to the "defense" he will make. Beyond this it will not do to go. The

place and time to make a "defense" is in a court of jus-
tice, provided by law for hearing and determining a cause,
or some branch of it, and at the time appointed for such hear-
ing. Could it be contended for a moment that the pro-
curing of a justice of the peace to issue a writ of *habeas
corpus* for the release of a condemned and convicted felon
would be a proceeding in the "defense of a person charged
with a public offense," and there be no accountability to
the courts of the lawyer who would thus procure the release
of such a criminal? No higher justification can be found
in the fact that another officer was found, with as little
authority, who would issue the writ. The "defense" of a
person charged with crime is one thing. The procuring
of an escape of a criminal already convicted is quite an-
other.

A question propounded on the hearing of this cause was
as to the nature of this prosecution—whether against re-
spondent for contempt of court, or whether against his
standing at the bar of the courts of the state for the pur-
pose of disbarring him, if his conduct was found to merit
such a punishment? Clearly, the latter. No attachment
has issued, nor has an order to show cause why one should
not issue been made. Respondent has not been arrested,
and he is in no sense within the jurisdiction of the court
so far as the infliction of any fine or imprisonment is con-
cerned.

The next and last question presented is as to the juris-
diction of the court to take cognizance of the professional
conduct of one of its officers. Under the facts and circum-
stances of this case it seems that that jurisdiction cannot be
successfully questioned. While it is true that an attorney
is accountable directly to the court whose dignity he has
insulted or whose process he has resisted, yet we think it
equally true if a deceit or other wrong is practiced by an
attorney in his character as such, although not in a pro-
ceeding or suit pending in the court, yet he may be removed

or suspended by any court of which he was a member. This was the ruling in the matter of the removal of Peterson, 3 Paige's Ch. Rep., 510. In that case the chancellor, in delivering the opinion of the court, says: " Solicitors, attorneys, and counselors are admitted to practice and are entitled to special privileges under the laws of the state, for the purpose of enabling them to be useful to their fellow citizens in the ascertainment, prosecution, and defense of their legal and equitable rights; and if such officers abuse the trust which has been thus reposed in them, *    * it is the duty of the courts in which they practice to remove them from their office, as well for the protection of the public as to preserve the character of an honorable and useful profession."

In *The People v. Goodrich*, 79 Ills., 148, it was held that the supreme court having power by express statute to grant a license to practice law, has an inherent right to see that the license is not abused or perverted to a use not contemplated by the grant. And in granting such license it is on the implied understanding that the party receiving it shall in all things demean himself in a proper manner and abstain from such practices as will bring discredit upon himself and the courts. Other cases might be cited, but it it is not deemed necessary to do so. To deny a court the right to call its attorneys to account for any professional act committed by them which is derogatory to their profession and brings disgrace upon it, or upon the courts, would be to remove one of the strongest safeguards, erected by law and long established usages, to the profession of the law, to the courts, and to the people.

From a careful consideration of the report of the committee, the evidence, and the law, the court finds that the charges preferred are fully sustained. It is therefore ordered by the court that the respondent L. C. Burr be removed from his office as an attorney of this court; the legal effect of which removal will be to deprive him of the

power to practice as an attorney in any other court of record of this state, but that at the end of two years from this date he may apply for reinstatement if he so desires. A copy of the order removing him must be sent by the clerk of this court to each of the judges of the district courts of this state.

JUDGMENT ACCORDINGLY.

MAXWELL, CH. J., concurred.

COBB, J., dissented.