STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. JAMES J. FITZGERALD, RESPONDENT.

85 N. W. 2d 323

Filed October 4, 1957. No. 34205.

*Clarence S. Beck,* Attorney General, and *Gerald S. Vitamvas,* for relator.

*Kennedy, Holland, DeLacy & Svoboda,* for respondent.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an original proceeding brought by the State on the relation of the Nebraska State Bar Association praying for disciplinary action against the respondent, James J. Fitzgerald. The charges against respondent are that: "* * * during and for the years 1947, 1948, 1949, 1950, 1951, 1952, 1953, and 1954, (he) failed to file with the United States of America, or any office or branch thereof, or with the United States Treasury Department, Internal Revenue Service, any return, report, or information relating to or concerning his income, earned or reportable, during said years; that the said James J. Fitzgerald had an income for each of said years which he was required by law to report to the said United States Treasury Department, Internal Revenue Service; that on or about the 5th day of January, 1956, the said James J. Fitzgerald was charged in the United States District Court for the District of Nebraska, sitting at Omaha, Nebraska, with failure to make the income tax returns, as aforesaid, to which he entered a plea of nolo contendere; that upon a hearing he was fined the sum of $750.00 on account thereof."

Respondent admits these charges to be true but claims he was not thereby charged with nor guilty of any act involving moral turpitude.

"In granting a license to practice law it is on the implied understanding that the party receiving it shall in

all things demean himself in a proper manner, and abstain from such practices as cannot fail to bring discredit upon himself, the profession, and the courts." State ex rel. Attorney General v. Burr, 19 Neb. 593, 28 N. W. 261. See, also, State ex rel. Nebraska State Bar Assn. v. Palmer, 160 Neb. 786, 71 N. W. 2d 491.

"The purpose of a disbarment proceeding is not so much to punish the attorney as it is to determine in the public interest whether he should be permitted to practice." State ex rel. Wright v. Sowards, 134 Neb. 159, 278 N. W. 148. See, also, State ex rel. Nebraska State Bar Assn. v. Wiebusch, 153 Neb. 583, 45 N. W. 2d 583; State ex rel. Nebraska State Bar Assn. v. Palmer, *supra*.

While it is clear that the offenses committed were committed by the respondent in his capacity as a private individual, and not in any professional capacity, however, we have held that if such misconduct indicates moral unfitness it justifies our taking action thereon. See, State ex rel. Sorensen v. Scoville, 123 Neb. 457, 243 N. W. 269; State ex rel. Wright v. Sowards, *supra*. As said in State ex rel. Sorensen v. Scoville, *supra*: "Misconduct of attorney, indicative of moral unfitness for the profession sufficient to deny an applicant admission to the bar, even if the act is not committed in a professional capacity, justifies disbarment."

Section 7-104, R. R. S. 1943, requires: "Every attorney upon being admitted to practice in the Supreme Court or district courts of this state, shall take and subscribe an oath substantially in the following form: 'You do solemnly swear that you will support the Constitution of the United States, and the Constitution of this state, and that you will faithfully discharge the duties of an attorney and counselor, according to the best of your ability.' "

We said in State ex rel. Nebraska State Bar Assn. v. Wiebusch, *supra*, that: "Such an oath requires lawyers to faithfully discharge their duties, uphold and obey the Constitution and laws of this state, observe estab-

lished standards and codes of professional ethics and honor, maintain the respect due to courts of justice, and abstain from all offensive practices which cast reproach on the courts and the bar." See, also, State ex rel. Nebraska State Bar Assn. v. Palmer, *supra.*

In the Rules Creating, Controlling and Regulating Nebraska State Bar Association it is provided by Article X thereof, as to professional conduct, that: "The ethical standards relating to the practice of law in this state shall be the canons of Professional Ethics of the American Bar Association, including the additions and amendments as of January 1, 1945, thereto, and those which may from time to time be approved by the Supreme Court."

Canon 29 thereof provides in part that: "He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice."

And canon 32 provides in part that: *"He must also observe* and advise his client to observe *the statute law,* though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen." (Emphasis ours.)

Respondent, who is now 49 years of age, was graduated from Creighton law school in 1932 and was admitted to the practice of law in this state on June 3, 1932. Upon being admitted he immediately began the practice of law in Omaha and has continued to do so except for a period of 4 years, beginning May 9, 1942, during which time he served in the armed forces of his country. During his years of practice respondent served as deputy county attorney of Douglas County for a period from 1935 to 1940 and as county attorney thereof from 1947

to 1951, having been elected in 1946 for a 4-year term beginning on January 9, 1947.

On January 27, 1947, respondent suffered a coronary occlusion and entered a hospital because thereof on January 29, 1947. He remained in the hospital until February 15, 1947, when he was released to return to his home with instructions to remain there and rest. This he did until in May 1947. Thereafter, in June 1947, he returned to his office for an hour or two a day but gradually increased the length thereof until in the fall when he returned to full duty. However, at all times during this period, he avoided excitement, overexertion, or anything of a nature that would tend to excite, tire, or overburden him. Respondent, because of this illness, failed to file a report of his income for 1946, due March 15, 1947, with the Bureau of Internal Revenue although he had a taxable income to report for that year.

After respondent commenced working full time he went down to see the people in charge of the Internal Revenue Service in Omaha but instead of making an application to obtain an extension of time in order to file his income tax report due March 15, 1947, based on the fact that he was ill and unable to file a report at the time it was due, he gave them a hypothetical case of a doctor client, using the same facts as his own as an example. Those in charge of the Internal Revenue Service would not assure respondent that if he filed a delinquent tax return for the doctor and paid all taxes, penalties, and interest assessed thereon that there would be no criminal prosecution or publicity in connection therewith and that the doctor would just have to take his chances with what would happen. Thus not being given the assurance by those in charge of the Internal Revenue Service that he could avoid criminal prosecution, and the publicity that would result therefrom if he filed a delinquent income tax report for 1946 respondent, because he was then county attorney, felt he could not afford to take any chance that this would happen

to him and did not file his income tax report for 1946 and thereafter failed to file reports of his income for 1947, 1948, 1949, 1950, 1951, 1952, 1953, and 1954 which were due respectively in 1948, 1949, 1950, 1951, 1952, 1953, 1954, and 1955 although he had substantial income subject to income tax for each of those years.

Nothing further developed until sometime in 1955 when respondent was called by those in charge of the Internal Revenue Service in Omaha to explain his failure to file income tax reports as required by section 145(a) of the Internal Revenue Code of 1939, Title 26 U. S. C. A., § 145 (a), and section 7203, Internal Revenue Code of 1954, 26 U. S. C. A., § 7203. This section makes it a misdemeanor, punishable by a fine of not more than $10,000, or imprisonment for not more than 1 year, or both, for any person required by law to make a federal income tax return to willfully fail to make the same. Respondent, in order to avoid prosecution and the publicity that would arise therefrom, tried to buy his way out of the difficulty he found himself in as a result of what he had done by offering to pay the government's figure of what it claimed he then owed for the years he had not reported his income (some $77,000) if no criminal action was taken against him, but this offer was refused by those in charge.

On January 5, 1956, an information was filed against respondent in the United States district court for the district of Nebraska containing three counts. The third count charges as follows: "That during the calendar year 1954, JAMES J. FITZGERALD who was a resident of the City of Omaha, Douglas County, Nebraska, within the District of Nebraska, had and received a gross income of $14,240.88, that by reason of such income he was required by law after the close of the calendar year 1954, and on or before April 15, 1955, to make an income tax return to the District Director of Internal Revenue for the Internal Revenue Collec-

tion District of Nebraska, at Omaha, Nebraska, within the District of Nebraska, stating specifically the items of his gross income and any deductions and credits to which he was entitled; that well knowing all of the foregoing facts, he did wilfully and knowingly fail to make said income tax return to the said District Director of Internal Revenue or to any other proper officer of the United States." Counts I and II are the same except they relate to the years 1952 and 1953 respectively and show a different amount of gross income, that of 1952 being $9,851.77 while that for 1953 being $14,097.26.

On a plea of nolo contendere respondent was fined $250 on each count, which he paid. The record establishes and respondent admits that he is guilty of the charges filed against him.

Respondent contends that what he did does not involve moral turpitude and therefore it is not a proper basis for discipline. A discussion of what is meant by the phrase "Moral Turpitude" can be found in 58 C. J. S. at page 1200. There are cases holding as respondent here contends, as evidenced by State v. McKinnon, 263 Wis. 413, 57 N. W. 2d 404; Kentucky State Bar Assn. v. McAfee, —— Ky. ——, 301 S. W. 2d 899. On the other hand there are cases that come to the opposite conclusion. See, In re Means, 207 Or. 638, 298 P. 2d 983; Rheb v. Bar Assn. of Baltimore, 186 Md. 200, 46 A. 2d 289; In re Burrus, 364 Mo. 22, 258 S. W. 2d 625; In re DePuy, 10 N. J. 282, 90 A. 2d 19. As stated in In re Burrus, *supra:* "We think it quite clear and, accordingly, hold that his intentional failure to make returns as the law required constituted conduct involving moral turpitude within the meaning of both the statute, § 484.240 RSMo 1949, V.A.M.S., and our Rule 4.47." Without discussing the issue at length we also think it is clear that to knowingly and willfully fail to make income tax reports, as required by federal statutes, involves moral turpitude even though the statute only classifies it as a misdemeanor.

We said in State ex rel. Wright v. Sowards, *supra:* "In general, it may be stated that a conviction of a felony or misdemeanor involving moral turpitude as such term is defined by the statutes is conclusive evidence warranting disbarment." And in State ex rel. Nebraska State Bar Assn. v. Wiebusch, *supra,* we said: "Observance of its provisions (statute) by lawyers is mandatory, and flagrant violation thereof, as in the case at bar, is to be considered a gross offense in disciplinary proceedings despite the fact that in criminal prosecutions a violation thereof is legislatively defined as a misdemeanor punishable by fine."

We think it is significant that over a period of 8 years respondent did not make a voluntary disclosure of his offenses to anyone until he was called by those in charge of the Internal Revenue Service. Considering everything involved we come to the conclusion that respondent must be disciplined for what he knowingly and willfully did for by doing so he violated both the oath he took on being admitted to the practice of law and the canons of ethics governing his conduct after his admission.

The evidence shows that respondent has been fully cooperating with those in charge of the Internal Revenue Service in an endeavor to ascertain the correct amount of tax he owes for the years involved and that he intends to pay the full amount thereof, together with penalties and interest assessed against him, when that amount has been established. There is no evidence before us that respondent has ever breached his duty as a lawyer nor is there any evidence that he has ever been guilty of any other wrongdoing as a private citizen.

In view of the facts herein set forth, and all the circumstances disclosed by the record relating thereto, we think the ends of justice will be properly served by suspending respondent from the further practice of law, same to go into effect 30 days after our judgment rendered herein becomes effective. If, at the end of

1 year from the effective date of his suspension, respondent makes an affirmative showing, sufficient to satisfy this court, that he has fully complied with our order of suspension and that he will not, in the future, engage in any practices offensive to the legal profession then he will be reinstated and allowed to engage in the practice of law, however, if he fails to do so then the suspension herein provided for is to become permanent. Judgment of suspension accordingly. All costs of this proceeding are taxed to respondent.

JUDGMENT OF SUSPENSION.

SIMMONS, C. J., participating on briefs.