STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. CHARLES L. CASKEY, RESPONDENT.
560 N.W.2d 414

Filed February 28, 1997.   No. S-96-500.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

David A. Domina, of Domina & Copple, P.C., for respondent.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD,
JJ., and BUCKLEY, D.J.

PER CURIAM.

Formal charges against the respondent, Charles L. Caskey,
were filed in this court on May 13, 1996. Caskey was charged

with violating Canon 1, DR 1-102(A)(1), (3), and (6), of the Code of Professional Responsibility in that he was convicted of the crime of failure to maintain records and pay taxes under Neb. Rev. Stat. § 77-27,115 (Reissue 1996), a Class II misdemeanor.

Caskey has practiced law in Nebraska since June 16, 1969, when he was duly admitted to the practice of law by this court. On July 31, 1995, Caskey was charged with the crime of failure to maintain records and pay taxes in the district court for Lancaster County, Nebraska. On October 17, 1995, pursuant to a plea agreement, Caskey pled guilty to the aforementioned charge, and the district court accepted his guilty plea. The district court sentenced Caskey to a term of probation for 2 years and ordered him to pay restitution to the Nebraska Department of Revenue in the sum of $5,289.85 for back taxes, penalties, and interest, plus any additional interest accrued prior to the date of payment. Caskey did not appeal the conviction or sentence.

The formal charges brought by the relator, Nebraska State Bar Association, allege the foregoing acts of Caskey constituted violations of his oath of office as an attorney and the following provisions of the Code of Professional Responsibility: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (3) Engage in illegal conduct involving moral turpitude. . . . (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law."

Caskey admits the acts committed by him violated DR 1-102(A)(1). However, Caskey denies that his conduct involved moral turpitude as set forth in DR 1-102(A)(3). Caskey further admits that the conduct in which he engaged *reflects* on his fitness to practice law but that he has endeavored, and continues to endeavor, to overcome this adverse reflection. Thus, Caskey admits a violation of DR 1-102(A)(6), but he contends that he is fit to practice law.

Following an evidentiary hearing, the referee found that Caskey had violated DR 1-102(A)(1), (3), and (6) of the Code of Professional Responsibility. The referee recommended that Caskey be suspended from the practice of law for 6 months and that he be required to divest himself of all business interests out-

side the practice of law, except for his title and abstracting business. Exceptions to the referee's report were filed by Caskey on October 10, 1996.

## STANDARD OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, this court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Brown, ante* p. 815, 560 N.W.2d 123 (1997).

## FACTS

Caskey is 53 years old and has maintained a general law practice in Stanton, Nebraska, since his admission to the bar in 1969. Prior to the institution of the present proceedings, Caskey had received two private reprimands for conflict of interest violations, the first on June 21, 1978, and the second on March 31, 1986.

In November 1991, at the request of three investors, Caskey agreed to incorporate a pallet reconstruction business called SDF, Inc. Caskey prepared the articles of incorporation, signed the articles as the incorporator, and filed the articles with the Secretary of State. Caskey was paid approximately $100 to $150 in fees for his professional services incorporating the business.

SDF was in financial trouble within 2 months of its creation. In approximately February 1992, the three original investors walked away from the pallet reconstruction business, the employees were laid off, and the business came to a standstill.

Several creditors approached Caskey in February 1992 and asked him if there was a chance of getting paid for the credit they had extended to SDF. At about the same time, a former employee asked Caskey if he could manage the manual labor to allow himself and others to receive a paycheck. Caskey claims that he felt a personal obligation to the community of Stanton to provide employment and to repay certain community vendors

for materials and supplies that the vendors had sold to the new business. Caskey assumed the management of SDF by performing the bookkeeping services of depositing receipts and paying the overhead from February through May 1992.

SDF continued to be under severe financial pressure during the 4-month term, and the costs of overhead and taxes continued to exceed its revenues. Caskey loaned $2,500 to SDF in March 1992 to provide extra funds and allow it to pay some of its creditors.

The corporate bookkeeping functions from February through May 1992 were performed in Caskey's law office by his legal secretary, Myrthalean Novotny. Caskey signed the signature card for SDF at a local bank. To the extent possible, Caskey paid the corporate bills with checks that he signed on behalf of the corporation.

Novotny testified that the revenues generated by the reconstruction business continued to be inadequate to pay its creditors, the wages, and the Nebraska Department of Revenue for income taxes withheld from the wages. Novotny also testified that she was instructed by Caskey to pay first the wages and the business expenses before paying the Department of Revenue. She further testified Caskey was fully aware that the quarterly withholding tax reports were not filed until sometime late in 1993 and that the withholding taxes were not paid. Caskey confirmed this testimony and admits that he alone made the decision to prioritize payments.

The reconstruction business of SDF again came to a standstill in June 1992, and the employees were laid off. Caskey testified that he made the decision in September 1992 to reopen the business under a new name by utilizing a previously incorporated business of which he was the sole stockholder. This new operating company, Stanton Leasing, made an effort from September 1992 until approximately June 1994 to operate at a profit. It, too, proved unsuccessful; however, withholding taxes were paid by Stanton Leasing to the Department of Revenue, albeit late, and were not at issue in the criminal proceedings.

The bill of exceptions from the district court criminal proceedings reveals that Caskey pled guilty as a result of his liability and responsibility as an officer and director of SDF to pay

the withholding taxes. However, Caskey's testimony before the referee was, at best, confusing. Caskey was unclear as to whether or not he was actually an officer or director of the corporation. He testified that there were no corporate minutes to reflect his appointment or acceptance to serve as an officer and director. Caskey curiously questioned whether or not the corporation was validly incorporated and operated. He did admit in his testimony that there were annual reports filed with the Secretary of State reflecting that he was SDF's treasurer and other documents reflecting that he took minutes at meetings as secretary of SDF. In addition to the March 1992 loan, Caskey claimed that he loaned SDF a total of $10,000. There were no promissory notes or corporate minutes reflecting the approval or terms of these alleged loans. Thus, while it is clear that Caskey acted as more than the attorney for SDF, the nature and extent of these additional roles is certainly less clear from the record.

Both Caskey and Novotny testified that Caskey did not pay himself wages or a dividend, did not repay himself for the alleged loans to SDF, and did not profit financially from the business venture. As of the date of the hearing before the referee, Caskey had complied with the district court order by paying all of the corporate taxes alleged to be owed to the Department of Revenue.

## ASSIGNMENTS OF ERROR

Caskey takes exception to the referee's report, asserting that the referee erred (1) in finding that Caskey's conduct involved moral turpitude, a violation of DR 1-102(A)(3); (2) in failing to define the phrase "[e]ngage in illegal conduct involving moral turpitude" as used in DR 1-102(A)(3); and (3) in recommending that a period of suspension be imposed upon Caskey as a sanction.

## ANALYSIS

A disciplinary complaint against an attorney will only be sustained if this court finds it to be established by clear and convincing evidence. *State ex rel. NSBA v. Johnston, ante* p. 468, 558 N.W.2d 53 (1997). Caskey admits to violating

DR 1-102(A)(1) and (6), and, on de novo review, we independently determine that the evidence clearly and convincingly establishes that Caskey indeed did violate a disciplinary rule and engaged in conduct that adversely reflects on his fitness to practice law.

However, Caskey denies that the illegal conduct which led to the criminal conviction involved moral turpitude. Caskey urges us to adopt a definition of moral turpitude such that illegal conduct involves moral turpitude "only where it inherently involves excessive selfishness . . . [in] disregard [of] the rights of others for the sake of the actor's self-gratification." Brief for respondent at 22-23. We decline this invitation. This court has consistently defined an act of moral turpitude as an act that is contrary to honesty and good morals, and we reaffirm that definition in the instant case. See *State ex rel. NSBA v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991).

In *State ex rel. NSBA v. Veith*, 238 Neb. at 247, 470 N.W.2d at 555, we wrote: " ' "The most common definition of an act of moral turpitude is one that is 'contrary to honesty and good morals.' [citations.]" . . . " 'The paramount purpose of the "moral turpitude" standard is not to punish practitioners but to protect the public, the courts, and the profession against unsuitable practitioners. . . .' " ' " (Quoting *In re Scott*, 52 Cal. 3d 968, 802 P.2d 985, 277 Cal. Rptr. 201 (1991).)

We have repeatedly determined that the knowing failure to file a personal income tax return constitutes illegal conduct involving moral turpitude. *State ex rel. NSBA v. Duchek*, 224 Neb. 777, 401 N.W.2d 484 (1987); *State ex rel. NSBA v. Hahn*, 218 Neb. 508, 356 N.W.2d 885 (1984); *State ex rel. Nebraska State Bar Assn. v. Tibbels*, 167 Neb. 247, 92 N.W.2d 546 (1958); *State ex rel. Nebraska State Bar Assn. v. Fitzgerald*, 165 Neb. 212, 85 N.W.2d 323 (1957). Caskey contends that the aforementioned cases are distinguishable because the cases involved attorneys who willfully failed to file personal income tax returns and thereby benefited from their misconduct. Caskey claims that he had an altruistic motive, "*i.e.*, he sought to benefit only others and not himself by keeping a pallet company afloat for the sake of its unskilled workers and its creditors in

the local community." (Emphasis in original.) Brief for respondent at 21-22. This argument is unconvincing.

First, it is difficult to conclude that Caskey's motives were purely altruistic in this matter when he acted variously as attorney, officer, manager, and creditor of SDF. Second, even if we accept Caskey's altruism argument at face value, this court will not condone the practice of Nebraska attorneys acting as self-appointed Robin Hoods for the alleged benefit of creditors in their local communities. Such actions promote disrespect for the law and bring disrepute to the bar. We hold that an attorney's knowing and willful failure to file a tax return, for which he or she has the legal obligation for filing, constitutes illegal conduct involving moral turpitude.

In the instant case, Caskey knew that the quarterly withholding tax reports were not filed and that the withholding taxes were not paid; further, Caskey specifically instructed Novotny to first pay employee wages and business expenses before paying withholding taxes to the Department of Revenue, in violation of Nebraska law. We conclude that the evidence clearly and convincingly establishes that Caskey's illegal actions were willful and contrary to honesty and good morals, in violation of DR 1-102(A)(3).

Consequently, we must determine the appropriate sanction to be imposed. To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) his or her present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Brown, ante* p. 815, 560 N.W.2d 123 (1997).

It is undisputed that Caskey, over a period of several months and on more than one occasion, knowingly failed to file quarterly withholding· tax reports with the Department of Revenue and deliberately chose not to pay the quarterly payroll taxes that were due. This court has consistently taken into account that multiple acts of misconduct are distinguishable from isolated incidents and are therefore deserving of more serious sanctions. See, *State ex rel. NSBA v. Johnston, ante* p. 468, 558 N.W.2d 53

(1997); *State ex rel. NSBA v. Van, ante* p. 196, 556 N.W.2d 39 (1996). There should be no question that the knowing failure to file tax returns and to pay taxes is a serious violation of the ethical obligations of an attorney. Because of the serious nature of the offense, the need to deter other attorneys from like conduct, and the desire to maintain the reputation of the bar as a whole, we have, in previous cases involving the failure to file personal income tax returns, imposed discipline consisting of suspension from the practice of law for 1 year. *State ex rel. NSBA v. Duchek*, 224 Neb. 777, 401 N.W.2d 484 (1987); *State ex rel. NSBA v. Hahn*, 218 Neb. 508, 356 N.W.2d 885 (1984); *State ex rel. Nebraska State Bar Assn. v. Tibbels*, 167 Neb. 247, 92 N.W.2d 546 (1958); *State ex rel. Nebraska State Bar Assn. v. Fitzgerald*, 165 Neb. 212, 85 N.W.2d 323 (1957).

However, each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances. *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996); *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995). It is necessary to consider mitigating factors in determining the appropriate discipline imposed on an attorney. *State ex rel. NSBA v. Johnson*, 249 Neb. 563, 544 N.W.2d 803 (1996). Unlike the cases in which we have imposed a 1-year suspension for the failure to file personal income tax returns, Caskey did not monetarily benefit from his misconduct in the instant case. Caskey immediately notified the Counsel for Discipline of his conviction and has cooperated fully in these disciplinary proceedings. The evidence suggests, through the testimony of numerous witnesses, that Caskey has been a selfless, respected attorney and person, and has served as a valuable part of his community for the past 27 years.

Nonetheless, Caskey was fully aware that he was violating Nebraska law and continued to do so over a period of several months. We also consider the fact that Caskey has been reprimanded twice for conflict of interest violations. Balancing the factors that mitigate in favor of Caskey maintaining his privilege to practice law against the nature of his offense, the need to deter others from similar misconduct, the need to maintain the reputation of the bar as a whole, and the need to protect the

public, we determine that Caskey should be suspended from the practice of law for a period of 6 months.

## CONCLUSION

It is therefore the judgment of this court that Charles L. Caskey be suspended from the practice of law for a period of 6 months, effective immediately, after which period Caskey may apply for readmission to the bar. Caskey is directed to pay costs in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1991).

JUDGMENT OF SUSPENSION.

CAPORALE, J., concurring in part, and in part dissenting.

I agree that the respondent Charles L. Caskey's misconduct involves moral turpitude and that for the reasons discussed in the majority opinion, he must be suspended from the practice of law. However, I disagree that the period of suspension should be only 6 months.

I respectfully suggest that the majority fails to give sufficient weight to Caskey's two prior reprimands for having failed to recognize conflicts of interest, for, as charged, the failure to recognize a conflict of interest is at the core of this offense as well. No matter how altruistic Caskey wishes to consider his motives, the harsh reality is that he elected to ignore the creditor preferred by the law, see Neb. Rev. Stat. § 77-2757 (Reissue 1996), and, instead, preferred the creditors in the community in which he maintained his law practice, thereby enhancing his own standing among those living and doing business therein and from whom he might reasonably expect to draw his clientele.

As the majority recognizes, multiple acts of misconduct are deserving of more serious sanctions than is an isolated act of misconduct. See *State ex rel. NSBA v. Johnston, ante* p. 468, 558 N.W.2d 53 (1997). I suggest this is especially applicable when multiple infractions involve the same type of misconduct, for that demonstrates an inability to learn from one's mistakes.

Indeed, not only did Caskey resolve a conflict of interest in his own favor, he invaded trust funds belonging to the state. § 77-2757. However, as the relator did not charge Caskey with that far more serious misconduct, I do not consider it in assessing what I consider to be the appropriate sanction.

For the misconduct with which he was charged, I would suspend Caskey from the practice of law for a period of 1 year.